128 So.2d 893 (1961)
BANNER CONSTRUCTION CORPORATION, Appellant,
v.
A.F. ARNOLD, Appellee.
No. C-284.
District Court of Appeal of Florida. First District.
April 25, 1961.
*894 Caldwell, Parker, Foster, Madigan & Oven, Tallahassee, for appellant.
Johnson & Riddle, Quincy, for appellee.
STURGIS, Judge.
Banner Construction Corporation, the appellant, was a third party claimant in a garnishment proceeding brought against Pan American Surety Company, as garnishee, by A.F. Arnold, the plaintiff holder of a judgment against Bruce Bowen, Inc., the defendant. The garnishee has paid into court the amount of its obligation to Bruce Bowen, Inc. Appellant seeks reversal of a judgment entered pursuant to verdict of a jury denying appellant's third party claim. We will hereafter refer to the garnishing creditor as Arnold and to the appellant as Banner.
On December 2, 1957, Arnold obtained a judgment against Bruce Bowen, Inc., for $1,500. On November 7, 1958, Bruce Bowen, Inc., sued Pan American Surety Company on an independent claim and on April 25, 1959, obtained a verdict for $11,212.08. On May 5, 1959, Bruce Bowen, Inc., assigned to Banner all sums due and to become due from Pan American Surety Company by reason of the aforesaid action or otherwise, and it was recorded the same day. On May 11, 1959, final judgment was signed on the verdict against Pan American Surety Company and it was recorded the following day.
On May 20, 1959, Arnold caused a writ of garnishment to be issued against Pan American Surety Company in an attempt *895 to realize on his judgment against Bruce Bowen, Inc., and on June 1, 1959, Banner interposed a third party claim on the basis of the mentioned assignment from Bruce Bowen, Inc. Arnold then filed an answer alleging, in substance, that Banner's claim was made in order to divert funds from Arnold, to circumvent his rights, and as a subterfuge to avoid payment. The action was tried on the issues thus raised and on January 26, 1960, a jury verdict was returned in favor of Arnold. This verdict was set aside and a new trial ordered. The second trial again resulted in a jury verdict for Arnold and upon denial of Banner's motion to set aside the second verdict, judgment was entered in favor of Arnold.
The points for determination as framed by Banner are: (1) Whether the evidence as a whole supports a finding that there was such an identity of personnel, officers and management between Banner and Bruce Bowen, Inc., as to justify a piercing of the corporate veil; (2) whether the evidence as a whole supports a finding that the assignment from Bruce Bowen, Inc., to Banner was fraudulent as to Arnold. Arnold restates the points involved substantially as follows: (1) Whether the relationship of the parties to the disputed transfer gives rise to indicia or badge of fraud, sufficient to support the verdict; (2) whether the second verdict is entitled to greater weight than the first verdict in Arnold's favor.
The evidence reflects that Bruce Bowen, Inc., was incorporated on June 1, 1953. Bruce Bowen was its president and, according to his testimony, sole stockholder. The records in the office of the Secretary of State reflect, however, that the officers were: Bruce Bowen, president, Elna B. Bowen, treasurer, E.L. Bowen, vice president, and W.J. Baggett, Secretary; all of whom were related by blood or marriage to Bruce Bowen. The directors were Bruce Bowen, Elna B. Bowen, his wife, and W.J. Baggett, his father-in-law. In the fall of 1954 Bruce Bowen, Inc., suffered financial difficulties and on June 2, 1955, Banner was incorporated.
Banner was capitalized by Bruce Bowen and his relatives. Its original officers consisted of S.J. Baggett, H.B. Bowen, and Elna B. Bowen. Its initial stockholders were W.J. Baggett, Bruce Bowen's father-in-law, Elna Bowen, Bruce Bowen's wife, J.E. Baggett, an uncle of Bruce Bowen's wife, Elton L. Bowen, Bruce Bowen's brother, W.M. Parrish, a stepson of Elton L. Bowen, Bruce Bowen, and one H.E. Goodman who transferred his stock to another. Subsequent changes in stock ownership consisted of the Goodman transfer, a transfer of one share to Parrish, and on January 8, 1956, a transfer of 200 shares from Elton Bowen to Bruce Bowen.
It appears from the testimony of Bruce Bowen that at the annual stockholders meeting of Banner held on January 8, 1956, there were present W.J. Baggett, Elna B. Bowen, H.B. Bowen, W.M. Parrish, Elton L. Bowen, and J.E. Baggett, which list "includes all directors [referring to Banner] and all directors of Bruce Bowen, Incorporated." It further appears from his testimony that "H.E. Goodman's stock had been transferred, so he was removed from the list of stockholders and directors." Further, the witness, apparently reading from the minutes of the stockholders meeting, testified:
"H.B. Bowen, executive vice-president, asked for stockholders and all directors permission to use funds of Banner Construction when he deemed it necessary and unavoidable on his part, such funds not to exceed Thirty Thousand Dollars in total at any one time without further authority, all said sums to be used to pay St. Paul Indemnity Company and the Quincy State Bank and endorsed by Bruce Bowen. All such sums to be repaid by sums deriving to Bruce Bowen, Incorporated, the first such sums after said St. Paul Indemnity is paid and Quincy State Bank is paid. Banner Construction Company is to have and claim a lien on any equipment or any other thing leased by St. Paul Company. *896 In the event it becomes impossible for assets of Bruce Bowen, Incorporated to repay such sums as are used, they shall be paid by Bruce Bowen personally. A report from the U.S. Navy job was given and well received. When the meeting closed, directors W.J. Baggett, H.B. Bowen and Elna B. Bowen voted concurrence with the stockholders decision for both Banner Construction and Bruce Bowen, Incorporated."
The record on appeal is devoid, however, of any action taken by Bruce Bowen, Inc., in connection with the transaction reported by the above minutes or of any business transaction between that corporation and Banner upon which such action on Banner's part is predicated. However, pursuant thereto approximately $12,000 was laid out by Banner upon obligations of Bruce Bowen, Inc.
There was ample evidence upon which the jury was warranted in drawing an inference of fraud, and the verdicts of two juries implied that such was found to exist.
Other than to judge what acts constitute indicia or badges of fraud, the law furnishes no test by which fraud can be determined. Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and the number occurring in the same case. The courts look askance at transactions which have the effect of shifting assets of a debtor with the effect prima facie of placing the assets beyond the reach of the creditor. And this is so whether the debtor is an individual, a partnership, or another corporation. If the proper elements are present, the courts will subject the property transferred to the claims of the creditors of the transferror. The recognized indicia or badges of fraud include the fact that the parties to the disputed transfer are related, one to the other, by blood or marriage, or are associated in business. 15 Fla.Jur., Fraudulent Conveyances, § 24; 24 Am.Jur., Fraudulent Conveyances, § 28. Insolvency or substantial indebtedness of a creditor is regarded as a badge of fraud. 37 C.J.S. Fraudulent Conveyances § 93. And while a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable. The relationship of the interlocking directors and stockholders of Bruce Bowen, Inc., and Banner Construction Corporation, the precarious financial condition of the assignor, Bruce Bowen, Inc., and the capacity of Bruce Bowen as general manager and vice president of Banner and as president and sole owner of the stock of Bruce Bowen, Inc., as of the time the mentioned action was taken by Banner stockholders, constitute sufficient evidence to sustain the verdict of the jury.
It is well settled that a second verdict rendered by a different jury upon substantially the same evidence is entitled to greater weight than the first verdict to like effect. American Automobile Insurance Association v. Pearson, 120 Fla. 553, 163 So. 247; Jacksonville Traction Co. v. Seelbach, 117 Fla. 233, 157 So. 509; Southern Express Co. v. Stovall, 75 Fla. 1, 77 So. 618; Jacksonville, T. & K.W. Ry. Co. v. Neff, 36 Fla. 584, 18 So. 765; Pensacola & Georgia Railroad Co. v. Nash, 12 Fla. 497. In Southern Express Co. v. Stovall, supra, the court cited with approval Valdosta Mercantile Co. v. White, 56 Fla. 704, 47 So. 961, 963, in which it was said:
"* * * it is generally with great reluctance that courts set aside the verdict of a jury upon a consideration of the testimony alone; and a second verdict upon the same set of facts, even though the judges might have come to a different conclusion, is too strongly fortified by the judgment of 12 men to warrant an appellate court in disturbing it except for strong reasons."
We have carefully examined the authorities relied on by appellant and are in accord *897 with the general principles of law upon which it relies. They are not inconsistent with our holding that there was ample evidence upon which to submit to the jury the issues raised by the pleadings in this case and the jury has decided. We are not authorized to substitute our views in the premises.
The judgment appealed must be and it is
Affirmed.
WIGGINTON, Chief Judge, and CARROLL, DONALD K., J., concur.