**TRANS MISSISSIPPI CORPORATION,
Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee (two cases).**

**Nos. 72–3087, 73–3018.**

United States Court of Appeals,
Fifth Circuit.

June 3, 1974.

Appellant, a Mississippi corporation engaged in the manufacture of concrete pipe for sale to contractors and governmental units, sought over $78,000 in tax refunds for claimed embezzlement losses resulting from activities of its former president, Joe C. Franklin. The United States denied that the mishandling of corporate funds was an embezzlement, claimed the funds were unreported corporate income which went for clandestine corporate purposes, and counterclaimed for some $247,000 in unpaid taxes, fraud penalties of $123,000 and $82,000 interest, bridging a limitations gap with assertions of fraud.

At trial the evidence revealed a scheme by which proceeds of certain sales to the tune of $522,165.04 were made to bypass the corporate books (and tax returns) and enter a special bank account controlled by Franklin. This account, through a complicated drafting procedure unnecessary to detail here, was disbursed by Franklin to various corporate salesmen for "promotional expenses." [1] The nature of these is not clear in the record, but it is clear that the corporation was not overly proud of them. When the existence of this account came to full light as the result of an audit reflecting almost $400,000 in deposits to it as unaccounted for,[2] Franklin hung on for a time but gave up after taxpayer took a state judgment against him for over $400,000.[3] Franklin was also convicted of signing false federal tax returns for the corporation.

Trial of the case resulted in a take-nothing judgment on plaintiff's refund claim and a full recovery for the government, based on special jury findings that there was no embezzlement and that taxpayer's returns in question were fraudulent. This consolidated appeal presents two claims of error from the main trial and one from denial of post-

William Liston, Winona, Miss., James P. Knight, Jr., Jackson, Miss., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Stephen M. Gelber, Leonard D. Van Slyke, Jr., Meyer Rothwacks, Bennet N. Hollander, John F. Murray, Attys., Tax Div., Dept. of Justice, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for defendant-appellee.

Before CLARK and GEE, Circuit Judges, and RUSSELL, District Judge.

GEE, Circuit Judge:

In this case, appellant taxpayer kicked the sleeping revenue service and lost an arm and a leg in the ensuing fracas. We affirm.

---

1. All but one of the 280 withdrawals from the account were on checks signed by Franklin, and all but six of these were made out to cash.

2. Along with about $65,000 returned to the taxpayer and almost $47,000 unallocable because of bad microfilm.

3. Released by taxpayer in exchange for his resignation and the surrender of his $33,146 worth of corporate stock.

judgment relief grounded in newly discovered evidence.

■ Taxpayer first complains of the exclusion of a worksheet prepared by IRS agent McCluskey, whose examination of taxpayer's returns and Franklin's bank account had precipitated the assessment. This handwritten document showed hypothetical adjustments to Franklin's personal returns which would have been appropriate had Franklin been found to have embezzled the funds in question. It is undisputed that the worksheet formed the basis of no action by the United States, was served on no one, and simply came to light as a result of the canvass of McCluskey's workpapers in the process of pre-trial discovery exchanges. Taxpayer was not permitted to introduce the worksheet or to use it in cross-examining McCluskey.

We conclude that taxpayer, in its effort to show inconsistency in McCluskey's position, should have been allowed to question him about the worksheet. Numerous cases hold that the government is entitled, in protecting the revenue, to take even formal and active inconsistent positions,[4] but under normal principles of cross-examination its adversary is likewise entitled to bring out prior inconsistent statements of its witness. It is dubious that the document was more than what we may term a "written thought" and not a "statement" at all; but it cannot be denied that the computation of tax due by Franklin on the assumption that he *did* embezzle these same funds is an action in some faint degree inconsistent with the agent's final position in the case that he did not, but rather used them in some sense for the taxpayer's benefit. The question is a close one, but a liberal regard for the right of cross-examination tips the scales.

What is not close is that the error was harmless. The effect of admitting the exhibit could have been no greater than

that of an affirmative answer by McCluskey to the question whether he had made computations of what Franklin's tax would be if he had embezzled the funds. Whatever mild inconsistency this might have shown could not have influenced reasonable jurors in the face of the crushing weight of evidence in the record that the funds were in fact used for purposes, however unsavory, intended to benefit the corporation. Franklin detailed the method by which the special account was accumulated and the arrangements by which surreptitious payments were made to salesmen from it. Salesmen and others testified to the actual functioning of the scheme. No one was heard to assert that by his lifestyle or otherwise Franklin gave indication of any such personal bounty as receipt of such sums would surely have produced, and the corporation's willingness to release its massive judgment against him for a comparative pittance was also proved. Against this showing, even an admission by McCluskey that the government was hedging its bet by preparations to pursue Franklin if the corporation eluded it would be a collateral circumstance fraught with insignificance to the reasonable mind. The error was not prejudicial. Fed.R.Civ.P. 61; 28 U.S.C. § 2111; see C. Wright & A. Miller, Federal Practice & Procedure § 2885 (1973).

■ Taxpayer next asserts error in the court's instructing the jury, over taxpayer's objection, that the government would not collect any tax, penalty or interest from taxpayer if it failed to prove fraud. The objection is that the instruction is untrue, or at least misleading, if taken by the jury to apply to taxpayer's refund claim so as to indicate the United States could not keep what it had already exacted without carrying the fraud issue. We find no prejudicial error in the instruction on the basis asserted.[5] It plainly applied to the gov-

---

4. *E. g.*, Goodall v. Comm'r, 391 F.2d 775 (8th Cir. 1968).

5. The instruction is a work of supererogation when added to the detailed instructions given

ernment's attempt to *collect* taxes in its suit, explaining the consequences to that effort of a failure to establish fraud. Jury trials cannot be conducted under perfectly antiseptic conditions, and we are unwilling to assume that this jury was unable to distinguish between the government's effort to collect taxes and the taxpayer's attempt to collect a refund. Taken as a whole, the charge was correct, adequate, and not misleading. Gulf Coast Bldg. & Supply Co. v. Electrical Workers Local 480, 428 F.2d 121 (5th Cir. 1970); Delancey v. Motichek Towing Service, Inc., 427 F.2d 897 (5th Cir. 1970).

■ Finally, taxpayer complains of the court's denial of its Rule 60(b) motion for relief from judgment on the ground of newly discovered evidence. The evidence put forward, taken at its strongest, was no more than rather mild impeachment of one of the salesmen-witnesses, Dampeer, about the amount of "promotional" funds he received and when he had last seen Franklin before the trial. It indicated that Dampeer's estimate of the amounts given at trial was probably high and that he had been seen in Franklin's company within a month of trial, which was at variance with Dampeer's trial testimony.[6] Among others which might be made, a sufficient answer to this claim of error is that evidence merely cumulative or impeaching is not generally within the canon of "newly discovered evidence" for Rule 59 or Rule 60(b) purposes. Chemical Delinting Co. v. Jackson, 193 F.2d 123 (5th Cir. 1951), *cf.* United States v. 41 Cases, More or Less, 420 F. 2d 1126 (5th Cir. 1970). Such motions are addressed to the sound discretion of the court. The trial judge did not abuse his discretion in concluding that these potatoes were too small to form a basis for the extraordinary relief sought.

Affirmed.

by the court on the fraud issue. But it is, as to that issue, patently true.

6. At the evidentiary hearing of the motion, the witness who claimed to have seen this meeting retracted the only point of any significance to this in his affidavit, the time of the meeting. He explained that he had not realized the affidavit fixed such a time, since he had left his glasses at home and hence did not read it before signing it.