**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randolph C. FERNON, Jr., Etc. and
Susanna F. Fernon,
Defendants-Appellants.**

No. 78–3634.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 23, 1981.

Stanley M. Lane, Tampa, Fla., for defendants-appellants.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Grant W. Wiprud, John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

GEWIN, Circuit Judge:

Appellants, husband and wife, appeal from the district court's judgment finding them liable to the appellee-Government, as

a defrauded creditor, for the sum of $40,000 plus interest. The following three issues were raised before this court: (1) whether the Government's cause of action was barred by state statute of limitations or common-law doctrine of laches; (2) whether prejudicial error affecting the substantial rights of the appellants was committed at trial; and (3) whether the conveyance in question was made in fraud of creditors. After a careful examination of the record, we find the first two issues must be answered in the negative while the third requires a positive response. We affirm.

This case involves the unfortunate financial plight of a family in the State of Florida. Due to a most ill-fated set of circumstances, the monetary woes suffered by Randolph C. Fernon, Sr. and his wife Dorothy have now necessarily been revisited upon their son Randolph C. Fernon, Jr. and his wife Susanna, the herein named appellants.

The beginning of this unhappy scenario can be traced to the period immediately preceding the mid-sixties at a time when the elder Fernons were afflicted with serious financial reverses.[1] On October 12, 1965,[2] when his parents were liable to the Government as a present creditor for tax deficiencies in 1962, 1963, and 1964 and as a future creditor for tax year 1965, Fernon, Jr.'s father and mother transferred an ocean front lot and house to him individually. At the date of transfer, this property was valued at $40,000.

Both parents subsequently died and federal taxes were thereafter timely assessed on June 14, 1968. Later on, proof of claims for internal revenue taxes were also filed against both estates. Fernon, Jr., on August 3, 1967, conveyed the realty to himself and his wife thereby creating a tenancy by the entirety. Nearly three years later, on April 21, 1970, Susanna and Randolph Fernon, Jr. sold the property to bona fide purchasers for $75,000.

The Government, on February 22, 1974, filed a complaint alleging that the 1965 conveyance from the elder Fernons to their son was in fraud of creditors. After a week long non-jury trial during which Fernon, Jr., a licensed attorney, represented both the interests of himself and his wife, the district court rendered judgment in favor of the United States. The trial judge concluded that the transfer was indeed fraudulent. Moreover, the appellants were found liable as constructive trustees for the full value of the property at the time it was transferred, not at the later date when appellants sold it to innocent purchasers for value.[3] Appellants' motion for rehearing or new trial was denied. Timely notice of appeal was filed with this court. The Government's cross-appeal was thereafter dismissed by stipulation and with prejudice on March 27, 1979.

We now must direct our attention to the first issue raised on appeal. That is, whether the Government's cause of action was barred by any Florida statutes of limitation or the common-law doctrine of laches. Although the Government properly pursued its claim in federal district court, "until Congress speaks to the contrary, the existence and extent of liability [in such cases] should be determined by state law." *Commissioner.v. Stern*, 357 U.S. 39, 45, 78 S.Ct. 1047, 1051, 2 L.Ed.2d 1126, 1131 (1958). Consequently, the United States proceeded under the applicable Florida fraud statute[4]

---

1. It appears from the record that several businesses with which Fernon, Sr. was intimately involved were on the verge of bankruptcy. As if that were not enough, a lawsuit was also pending against one of these same enterprises.

2. Originally, the lot was owned by the senior Fernons jointly. However, in 1964 the grandparents of Fernon, Jr. were given a life estate with the remainder to revert to Fernon, Jr.'s parents upon the deaths of both grandparents. During the grandparents' tenancy they built a home on the land in question. Shortly before this October conveyance, the property had reverted back to the elder Fernons.

3. The trial judge also ordered that interest be paid on the $40,000 from the date the action was filed, February 22, 1974.

4. Fla.Stat.Ann. § 726.01 reads, in pertinent part, as follows: "Every . . . conveyance . . . of lands . . . made . . . [in] fraud . . . to delay, hinder or defraud creditors . . . shall be . . . deemed . . . utterly void . . . ."

in order to assert the rights it possessed under federal statutory law.[5]

Nonetheless, "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights.... The same rule applies whether the United States brings its suit in its own courts or in a state court." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283, 1285–86 (1940). *See United States v. West Texas State Bank*, 357 F.2d 198, 201 (5th Cir. 1966); *United States v. Embrey*, 145 Fla. 277, 279, 199 So. 41, 42 (1940). "When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Summerlin*, 310 U.S. at 417, 60 S.Ct. at 1020, 84 L.Ed. at 1286. Therefore, neither the otherwise applicable Florida statute of limitations[6] or laches was a bar to the Government's right to recover the value of the fraudulently transferred property in partial satisfaction of the outstanding tax deficiencies previously mentioned. Since the Government did file within the appropriate federal time constraints, its claim was indeed timely made.[7]

Turning to appellants' second contention, we find it equally without merit. The appellants have continuously stressed to this court the "chilling effect" that purportedly curtailed their rights to a fair trial. This deprivation was said to have resulted from the trial judge's treatment of Fernon, Jr. whenever he testified. Supposedly the judge refused to permit him to object in such instances thereby precluding the appellants of any meaningful defense. Even though this issue is raised for the first time on appeal to this court, we find it is in the interest of substantial justice to consider it in any event.[8]

Appellants have merely shown situations where the court below expressed concern over Fernon, Jr.'s triple role as one of the defendants, as a witness, and as the defense attorney. It seems a few of the alleged prejudicial actions of the trial judge were really the result of Fernon, Jr.'s repeated attempts to make legal arguments while on the stand. On at least one occasion where the lower court was said to have forbade any objection from Fernon, Jr., the court actually sustained the complaint. Although we presently find no fault with any of the trial judge's actions, even if error of some type had been actually committed, the appellants have failed to show that they were substantially prejudiced thereby.

---

5. I.R.C. § 6321 reads as follows:
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

6. Fla.Stat.Ann. § 95.11(6), which would have effectively precluded the claim in the instant case, allows only two years within which to file suit.

7. I.R.C. § 6322 states that "the lien imposed by section 6321 [*supra* note 5, at 612] shall arise at the time the assessment is made ...." Such indebtedness, pursuant to I.R.C. § 6502, "may be collected ... by a proceeding in court ... [so long as commenced] within six years after the assessment of the tax ...." Inasmuch as the tax deficiencies were assessed on June 14, 1968 and the instant complaint was filed on February 22, 1974, the action was commenced just less than four months before the six year period expired.

8. Traditionally, appellate courts have refused to do this. *Commercial Credit Business Loans, Inc. v. St. Louis Terminal Field Warehouse Co.*, 514 F.2d 75, 77 (5th Cir. 1975). Nevertheless, an exception has been made when the interest of substantial justice is at stake. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976). We believe the interests of substantial justice would be best served by permitting the appellants to raise this contention for the first time before this tribunal. Otherwise, if their allegations were true, the very treatment they now submit was error would have not only "chilled" their constitutionally guaranteed rights but would have effectively barred them from seeking relief from a reviewing court also.

Thus, if error did exist, it is harmless and does not warrant a reversal and an order for a new trial.[9]

█ Finally, we will now examine the real heart of this appeal: whether the 1965 conveyance was made in fraud of creditors. "To constitute a fraudulent conveyance, there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due." *Bay View Estates Corp. v. Southerland*, 114 Fla. 635, 650, 154 So. 894, 900 (1934). Obviously the Government stood as a creditor for purposes of collecting the tax deficiencies previously discussed. Moreover, the beach front property would be subject to the payment of this debt. *See supra* notes 4 & 5, at 612. Therefore, only the second requirement, which is one of the aforementioned three that must be shown to exist under Florida law in order to establish the appellants' liability, *Commissioner v. Stern*, remains for our consideration.

█ "A fraud upon creditors consists in the intention by the debtor to prevent his creditors from recovering their just debts by withdrawing his property from the reach of his creditors .... As the fraud rests upon the debtor's intent, it must exist at the time of the transfer." *Southerland*, 114 Fla. at 650, 154 So. at 900. This intention can be found by the existence of certain indicia or badges of fraud. *Cleveland Trust Co. v. Foster*, 93 So.2d 112, 114 (Fla.1957). These involve the following considerations:

(1) lack of consideration for the transfer, *Gyorok v. Davis*, 183 So.2d 701, 703 (Fla. App.1966); (2) close family relationship between the transferor and the transferee, *Fisher v. Grady*, 131 Fla. 1, 14, 178 So. 852, 858 (1937); (3) pending or threatened litigation against the transferor, *Money v. Powell*, 139 So.2d 702, 704 (Fla.App.1962); and (4) insolvency or substantial indebtedness of the transferor, *Banner Construction Corp. v. Arnold*, 128 So.2d 893, 896 (Fla.App.1961). "[W]hile a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable." *Id.* at 896.

█ The trial judge, sitting as the trier of fact without a jury, concluded that the first, second, and fourth indicia mentioned above were evident in the 1965 conveyance. Hence Fernon, Sr. was found to have intended to defraud his creditors by such a transfer. Fraud determinations are findings of fact, *Archer v. Commissioner*, 227 F.2d 270, 274 (5th Cir. 1955); *Stelle v. Dennis*, 104 Fla. 384, 140 So. 194, 195 (Fla. 1932), that will not be set aside upon appeal unless clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218, 1228 (1960); *Rushton v. Commissioner*, 498 F.2d 88, 95 (5th Cir. 1974); Fed.R.Civ.P. 52(a). We find that the trial judge's conclusions were not clearly erroneous.[10] Consistent

---

9. Fed.R.Civ.P. 61. *See generally Trans Mississippi Corp. v. United States*, 494 F.2d 770 (5th Cir. 1974); *Bell v. Swift & Co.*, 283 F.2d 407 (5th Cir. 1960); *Roberson v. United States*, 249 F.2d 737 (5th Cir. 1957).

10. Appellants make much of their contention that the trial judge incorrectly valued some of Fernon, Sr.'s stock holdings thereby causing an improper finding of the fourth badge, insolvency. This argument carries little weight with this court for several reasons.

Initially, we recognize that in order to show fraud under Florida law "it is not necessary to show that a debtor was actually insolvent at the time he executed the conveyance." *Bay View Estates Corp. v. Southerland*, 114 Fla. 635, 647, 154 So. 894, 899 (1934). It is enough to merely show his substantial indebtedness.

*Banner Construction Corp. v. Arnold*, 128 So.2d 893, 896 (Fla.App.1961). Fernon, Sr. was admittedly in debt to the Government for a large sum of money. The trial court learned of this fact in the course of its insolvency determination. This alone was enough to constitute a financially related badge of fraud.

Second, "[t]he evidence before the district court was sufficient to make out a prima facie case of fraud, and the burden of showing good faith was shifted to the parties to such conveyance." *United States v. Hickox*, 356 F.2d 969, 974 (5th Cir. 1966). Undoubtedly, the trial judge reasoned that the appellants failed to rebut the evidence of Fernon, Sr.'s insolvency.

Third, the finding of insolvency was a factual determination that will not be overturned on appeal unless clearly erroneous. *Amerada Hess Corp. v. Commissioner*, 517 F.2d 75, 82

with our reasoning on each issue as set forth above, we affirm the district court's judgment in all respects.[11]

AFFIRMED.

(3d Cir.), *cert. denied*, 423 U.S. 1037, 96 S.Ct. 574, 46 L.Ed.2d 412 (1975); *United States v. Kaplan*, 277 F.2d 405, 408 (5th Cir. 1960); *Sisto Financial Corp. v. Commissioner*, 149 F.2d 268, 269 (2d Cir. 1945). Without the necessity of reaching the question of whether the insolvency finding was clearly erroneous, we realize that the findings of the first two indicia of fraud, lack of consideration and close family relationship, were indeed not such error. Consequently, since these two indicia did exist, then together they provide a sufficient basis to warrant a finding of fraudulent intent without the necessity of establishing Fernon, Sr.'s insolvency. *Banner Construction Corp. v. Arnold*, 128 So.2d at 896. Therefore, even if the insolvency finding was clearly erroneous, it was harmless error. Fed.R.Civ.P. 61.

11. In view of the fact that the trial court properly concluded that the appellants knew or should have known that tax deficiencies were pending against their transferors, then they could not have possibly been said to be innocent purchasers for value as their grantees were found to be. Thus, appellants were correctly found liable as constructive trustees for the value of the property at the time of transfer plus interest from the time the Government filed suit. *Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 236, 53 S.Ct. 539, 542, 77 L.Ed. 1140, 1146 (1933).