**Harvey MACKS, Plaintiff,**

**v.**

**Frances Y. CLINTON, an individual; and the United States of America, Defendants,**

**v.**

**Kenneth MACKS and Branford State Bank, Third–Party Defendants.**

**No. 91–1069–Civ–J–20.**

United States District Court, M.D. Florida, Jacksonville Division.

Nov. 13, 1993.

Amended Opinion Jan. 7, 1994.

Robert Aguilar, Kopelousos, Head, Smith, Townsend & Metcalf, P.A., Orange Park, FL, for Harvey Macks and Kenneth R. Macks.

Ralph Lee, U.S. Attorney's Office, M.D. Fla., Jacksonville, FL, A.B. Phillips, and Richard A. Resnick, U.S. Dept. of Justice, Tax Div., Washington, DC, for the U.S.

James W. Prevatt, Jr., Airth, Sellers, Lewis & Prevatt, Live Oak, FL, for Branford State Bank.

## OPINION

SCHLESINGER, District Judge.

This matter is before the Court for decision following a non-jury trial held on September 10, 1993. This Court has federal question jurisdiction over Plaintiff's quiet title action pursuant to 28 U.S.C. §§ 1331, 1444.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

### A. INTRODUCTION

Plaintiff, brother of Third–Party Defendant Kenneth Macks, brought this quiet title action to remove clouds from title concerning two parcels of land—a five-acre tract ("parcel one") and a thirty-five acre tract ("parcel two") which are located in Suwannee County, Florida. Kenneth Macks and his former wife Sharon Macks purchased parcel one and parcel two. Later, the two were divorced. As part of a divorce settlement agreement, Sharon executed a deed in August 1983 transferring her interest in the property to Kenneth Macks.

Two years later, a series of conveyances occurred, the purpose for which is in dispute: Kenneth conveyed his interest in parcel one to his brother Harvey, allegedly for $5,000. Also on September 30, 1985, Kenneth allegedly conveyed parcel two to Harvey to satisfy an unrecorded and handwritten promissory note dated June 20, 1983. This note allegedly was given to Harvey as collateral for a $35,300 investment which Kenneth never repaid. In February 1987, Kenneth transferred parcel two to his girlfriend Frances Clinton, then transferred this same parcel to Clinton in September 1988. In the same month, Harvey Macks similarly transferred his interest in parcel two to Clinton.

While these transfers were occurring, the Internal Revenue Service ("IRS") had issued notices of deficiency for various years: 1978, 1979, 1981, 1982, 1983, and 1984. Plaintiff filed tax petitions on December 8, 1986 and November 13, 1987, which were settled with the IRS. On April 27, 1990, the IRS issued tax assessments against Kenneth and Sharon for the years 1978, 1979, 1981, and 1982, in the amount of $210,458.42. A second assessment was levied against Kenneth on May 21, 1990, for the years 1983 and 1984 in the amount of $44,238.52. The IRS filed a notice of tax liens on February 21, 1991.

The question presented for resolution after trial is whether Kenneth transferred the parcels of land "with the intent to hinder, delay, or defraud creditors"? If he did, those transfers are null and void, and the United States' federal tax liens may attach to the parcels. Otherwise, Plaintiff's parcels of land are not subject to the tax liens.

### B. FRAUDULENT CONVEYANCE

#### 1. THE UNITED STATES IS A CREDITOR

■ The failure of a taxpayer to pay federal taxes gives rise to a lien in favor of the United States upon "all property and rights to property" belonging to a taxpayer at the time of the assessment. 26 U.S.C. § 6321. Thus, tax assessments levied against Kenneth Macks on April 27, 1990, and May 21, 1990, created valid tax liens as of those dates respectively. Kenneth Macks' property rights in the parcels to which the United States claims are subject to federal tax liens are determined by state law. Under Florida law, property conveyed by fraud "to delay, hinder, or defraud creditors" is deemed void. Fla.Stat.Ann. 726.01 (1991).

■ To establish a fraudulent conveyance, there must be "(1) a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance of property which is applicable to the payment of the debt due." *United States v. Fernon,* 640 F.2d 609, 613 (5th Cir.1981). The United States bears the burden of proving these three elements by a preponderance of the evidence. Earlier, the Court accorded the tax court's findings as *res judicata* and determined that Kenneth Macks is indebted to the United States for unpaid taxes in the amount of $317,493.81, plus interest and statutory additions from August 31, 1993. Amended Summary Judgment (Doc. No. 70) entered on September 1, 1993. Therefore, the United States has met its burden of proof regarding the first ele-

ment—that the United States is a creditor of Kenneth Macks.

## 2. INTENT TO DEFRAUD THE UNITED STATES

■ The United States contends that Kenneth Macks has attempted to avoid tax liability through various fraudulent conveyances. The United States has impleaded additional Third–Party Defendants and filed a counterclaim and a crossclaim. In those claims, the United States contends that Third–Party Defendant Kenneth Macks has fraudulently conveyed two parcels of land to Plaintiff and Clinton.

### a. Parcel One

Plaintiff contends that Kenneth Macks executed a deed dated September 30, 1985 (recorded on November 21, 1985), to him for $5,000, although it was not paid until 1987. Kenneth testified to this transaction during trial. Although this was his testimony and his brother's, the Court does not find it to be credible.

The evidence adduced during trial supports the Court's conclusion that Harvey never paid either $5,000 or any other consideration for the parcel. Kenneth Macks' actions prior to 1991 demonstrate that he alone owned the parcel. If there were any doubt that Kenneth Macks still owns the parcel, this doubt is resolved by considering Kenneth's explanation and actions. First, Kenneth Macks listed the five-acre tract as real estate owned by him on loan applications. Government's Exhibits 12 and 16. When Richard Bartholomew interviewed Kenneth Macks on March 27, 1991, and asked him about consideration paid for the property, Kenneth never stated that his brother Harvey paid $5,000 for the property.

Kenneth testified during trial that he sold parcel one in 1985 to Harvey. Harvey testified that he did not pay him until 1987 because he did not have the money until then. The Court finds this testimony to be logically inconsistent. Harvey gave Kenneth $35,300 to invest on his behalf in 1983, only two years earlier, but he was unable to pay $5,000 for this parcel.

Bartholomew's testimony, that no consideration was paid for the parcel, is supported by the absence of documentary stamps. Ordinarily, documentary stamps are attached to the deed which reflect the value paid for the parcel. In this case, there were no stamps. Moreover, Francis Clinton—who the Court does find credible—testified that Harvey never paid him $5,000 for the property. She said that he disposed of the parcels to avoid paying taxes to the IRS, and the Court believes her. She said Kenneth told her he was transferring everything out of his name to avoid paying taxes owed to the IRS. The Court concludes, therefore, that Defendant United States has met its burden that the conveyance was fraudulent.

### b. Parcel Two

Kenneth Macks also executed another deed dated September 30, 1985 (recorded on November 21, 1985), which purportedly transferred parcel two to Harvey Macks, Plaintiff in this case. Plaintiff contends that Kenneth transferred the property to Harvey in satisfaction of an unrecorded handwritten promissory note executed on June 20, 1983. This note purports to secure a loan made by Harvey to Kenneth in the amount of $35,300, which monies were used for investment purposes. According to Harvey Macks' testimony, "if the investment fell through, he would get the land."

Plaintiff's primary proof that the conveyance was not fraudulent is the existence of the handwritten promissory note. However, the existence of Plaintiff's Exhibit 1, the handwritten promissory note, is in dispute. Although the note is dated June 20, 1983, Roger Martz, a special agent from the Federal Bureau of Investigation ("FBI"), testified that he performed various tests to determine the true date of origin of the note. The ink used in preparing the document was not manufactured before 1989. In his opinion, the document was not prepared until after 1989.

In order to mitigate against any inferences the Court may have drawn from this testimony, Harvey testified that—when he was deposed earlier and stated that the note was the original—he was mistaken. Further, Harvey claims that the original note was

signed in his presence in Pensacola, Florida, and that the reason for procuring this note at a later date and then backdating was not to defraud or mislead the IRS, who at that time was investigating Kenneth. The Court does not credit this testimony, but instead chooses to believe the other witnesses that testified such as Frances Clinton. Clinton testified that Kenneth was on the North Slope of Alaska in June 1983, and he did not come down until August 1983. Thus, she testified that he could not have been in Pensacola, Florida, in June—the alleged date that Harvey Macks claimed the *original* promissory note was signed.

There were other inconsistencies as well. Kenneth Macks testified that when he discovered the original note was missing in 1990, he asked Harvey if he knew where it was—he did not. So, he mentioned this to Frances Clinton who told him to make a duplicate. According to Kenneth, he then decided to prepare a new handwritten note and present it to the IRS. Never did he consider telling the IRS about the problem with the original. Moreover, Bartholomew testified that Kenneth Macks told him during a March 1991 interview that the property was transferred because he owed his brother $50,000 for fixing the house.

Harvey Macks testified that he and Kenneth were co-owners of A & S Septic Company. Harvey Macks also testified that he deeded parcel two to Frances Clinton in September 1988 so she could use it as collateral for a loan. To the contrary, Kenneth testified that he executed Exhibit B, the 1987 warranty deed for parcel two, to Clinton because she detected a legal error in the prior deed to Harvey, and by executing this deed, Harvey would be "cut off" from the property. Yet in Exhibit C, he later deeded the same parcel to Clinton in 1988, but this time Harvey also executed a deed which conveyed his interest in the parcel to Clinton. If Kenneth were trying to "cut off" Harvey in 1987, why would he later execute a second deed and obtain Harvey's consent to do so? Even if this was his purpose, transferring the property to Clinton demonstrates that Kenneth still considered himself to be the owner.

Otherwise, he could not convey any interest to Clinton.

In 1988, Kenneth Macks did co-sign a loan to form a new company known as Custom Trophies. Government's Exhibit 11–14. The proceeds of this loan were deposited in account held by Branford State Bank on December 5, 1988. Government's Exhibit 15. These funds were used by Harvey to pay A & S Septic Company's utility and mortgage payments. In fact, Kenneth testified that Harvey was the owner of A & S Septic and that Harvey paid the taxes on the business through 1985, until A & S became financially able to pay. Although he did not consider himself the owner of A & S Septic Company, Kenneth Macks availed himself, nonetheless, of an interest deduction on his 1989 tax return for that company. Government's Exhibit 26. Kenneth reported a net loss on the earnings of A & S Septic.

Even more compelling is a second loan obtained in 1989 from First Federal and Savings Bank of Florida. Kenneth Macks signed the loan application and the mortgage agreement to purportedly obtain monies for a new business. On that application which he signed, Kenneth stated that he was the owner of A & S Septic Company and had been for the past year. Furthermore, he did not remove himself from the A & S Septic bank account until September 1990. Government's Exhibit 68.

Kenneth Macks contended that he could not have intended to defraud a creditor, the IRS, because he had no knowledge that the IRS was seeking repayment of previously owed but unpaid taxes until 1987. Although this was his contention, the evidence presented during trial shatters Kenneth's testimony beyond rehabilitation. Beginning with Government's Exhibit 32 and continuing through Exhibit 57, the evidence is clear that Kenneth Macks learned of the IRS's efforts to recover unpaid taxes. As evidenced by Exhibits 38 and 39, Kenneth Macks' own writings challenging the correctness of an investment demonstrate that as early as 1984, he learned the IRS was pursuing him. Exhibit 40, in which the IRS notified Kenneth Macks that a deduction for a casualty loss would not be allowed, demonstrates that he learned 13

months prior to transferring parcel two that the IRS was pursuing unpaid taxes.

Although Exhibits 40 and 41 contain handwriting which states that "[w]e do not agree and request the appeals process be continued based upon the facts. The return as filed is true," to which handwriting Kenneth contended was not his, the IRS acted upon those words and assigned the case to an appeals officer. Harvey Mutch, an appeals officer with the IRS, testified that he met with Kenneth Macks to discuss tax returns for the years 1978, 1979, 1981, and 1982. In Exhibit 49, Kenneth Macks stated that "he contacted the above office when [he] *first received notice* on (sic) this inquiry." In that letter, he asked that an appointment be set up "in reference to the original letter [he] received" after July when he returned from Alaska. This, too, demonstrates that Kenneth Macks knew that the IRS was pursing him months before he conveyed the property at issue.

The stark differences between a loan application filed in 1988 and the various forms submitted to the IRS demonstrate further the true intent of Kenneth Macks. On his personal financial statement submitted to Branford State Bank in November 1988, Kenneth Macks listed his total net worth to be $167,506. When he submitted a statement of financial condition to the IRS 14 months later, he portrayed a different picture. He listed total assets to be $1,096. Government's Exhibit 17. Kenneth Macks failed to include a truck he owned. Government's Exhibit 18. On the loan application, he listed various real estate as being jointly owned, including parcel two. On the form submitted to the IRS, the same parcel is not listed.

The third element has also been established—that the property conveyed is applicable to the payment of the debt due. Other than these parcels, Kenneth owns no other assets which will satisfy his outstanding tax liabilities.

Although Plaintiff contends that he is able to avail himself of the statutory defense—that Harvey is a non-knowing purchaser for value—this contention is meritless. See Fla. Stat.Ann. § 726.109 (1988). Because the Court concludes that there was no consider-ation paid by Harvey Macks for either parcel, he never became the owner.

The Court concludes: that there was never any consideration paid, as Harvey suggests, for the purported transfers of parcels one and two; that the purported transfers were fraudulent and are null and void, and thus, do not preclude the United States from satisfying valid tax liens. Further, the Court finds that Harvey Macks and Frances Clinton are the nominees and transferees of Kenneth Macks.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Court directs the clerk to enter final judgment quieting title to both parcels as follows: By entry of this judgment, Kenneth Macks is declared owner of parcels one and two, and Harvey Macks does not have any title or interest in the subject property. Further, Harvey Macks and Frances Clinton are adjudged to be nominees and transferees of Kenneth R. Macks, and as nominees, possess no title or interest in the subject property. Defendant United States of America has valid federal tax liens which encumber both parcels, but Defendant Branford State Bank possesses a superior interest to that of the United States as to parcel two.

2. The United States may foreclose its federal tax liens, but shall do so in a separate case.

3. The Clerk is directed to close this case.

**DONE AND ORDERED.**

### *AMENDED OPINION*

Before the Court is Defendant United States' Motion to Amend Opinion Entered on November 18, 1993 (Doc. No. 82, filed December 2, 1993). To date, there has been no response to this Motion.

It is **ORDERED AND ADJUDGED** that:

(1) Defendant United States' Motion to Amend Opinion Entered on November 18, 1993 (Doc. No. 82) is **GRANTED,**

(2) The Opinion entered on November 18, 1993 (Doc. No. 80) is amended so that the United States is permitted to foreclose its tax liens and sell the real property at issue in

this action and does not need to do so in a separate case,

(3) All other aspects of the Opinion entered on November 18, 1993 remain in full force and effect,

(4) The United States shall submit a proposed Order of Sale within eleven (11) days of this Amended Opinion and

(5) The Clerk is directed to reopen this case.

**DONE AND ORDERED.**