UNITED STATES, Plaintiff,

v.

Josephine PERRINA, Defendant.

Civ. A. No. 92–4222(JCL).

United States District Court,
D. New Jersey.

Nov. 14, 1994.

Susan C. Cassell, Asst. U.S. Atty., Newark, NJ, for plaintiff.

David P. Lonski, Shamy, Shipers & Lonski, New Brunswick, NJ, for defendant.

## OPINION

LIFLAND, District Judge.

Presently before the Court is defendant's motion for summary judgment.

*BACKGROUND*

On October 23, 1992, the Internal Revenue Service ("IRS") filed an Amended Complaint against defendant, Josephine Perrina ("Josephine"). IRS alleges that defendant owes IRS $87,500 in partial fulfillment of the tax liability of her deceased husband, Joseph Perrina ("Joseph"). IRS seeks judgment against Josephine as a transferee of Joseph's property, which, IRS alleges, was fraudulent-

ly conveyed.[1] IRS alleges that Joseph fraudulently conveyed property located at 299 Cindy Street, Old Bridge, New Jersey (the "Old Bridge property") to Josephine in 1985 at a time when he was insolvent or, alternatively, with the intent to hinder, delay or defraud his creditors, including the United States. (Amended Complaint, ¶¶ 13–17.)

*Tax Liability of Joseph Perrina*

The parties stipulate that from June 30, 1984 to June 30, 1986, Joseph was the president and 51% shareholder of Lime Waterproofing, Inc. (Proposed Final Pre–Trial Order, Stipulation of Facts, p. 1.) IRS alleges that Lime Waterproofing incurred substantial employment tax liabilities for the last two quarters of 1984, the whole of 1985, and the first two quarters of 1986. (Amended Complaint, ¶ 7 and Proposed Final Pre–Trial Order, Plaintiff's Contested Allegations, ¶ 3.) IRS alleges that on March 9, 1987, it assessed tax liability against Joseph in the amount of $228,888.73 pursuant to 26 U.S.C. § 6672 "because he was a person responsible for collecting, accounting for and paying over to the IRS the withheld income and social security taxes of the employees of Lime Waterproofing, and because he willfully failed to do so." (Amended Complaint, ¶ 8.) IRS alleges that Joseph's liability accrued during the third and fourth quarters of 1984 and the first, second, third and fourth quarters of 1985.[2] (Amended Complaint ¶ 12.) IRS also

alleges that as of April 13, 1992, Joseph owed the United States $358,813.35. (Proposed Final Pre–Trial Order, IRS's Contested Allegations, ¶ 6.)

Josephine asserts that no assessment was ever made against her for all or any portion of this tax liability. IRS does not dispute this.

*The Old Bridge Property*

The following facts are undisputed. From 1966 to 1985, Joseph and Josephine held the Old Bridge property as tenants by the entirety. By deed dated October 7, 1985, this tenancy was severed when Joseph conveyed his entire interest in the property to Josephine for the sum of $100. On March 30, 1990, Josephine conveyed the Old Bridge property to her son for $175,000, which was full and fair consideration. Joseph died on June 7, 1992. (Proposed Final Pre–Trial Order, Stipulation of Facts, pp. 1–2.) IRS argues that Josephine owes the United States the value of Joseph's interest in that sale, *i.e.*, $87,500, half of $175,000.

*Summary Judgment*

█ Josephine argues that she cannot be held liable as a transferee of Joseph's interest in the Old Bridge property because the statute of limitations for making an assessment against Josephine has passed. Josephine relies on 26 U.S.C. § 6901.[3] That section

---

1. On October 7, 1992, IRS filed the original Complaint against Joseph and Josephine. Josephine was named only to extinguish her interest in the allegedly fraudulently transferred property. Subsequent to the initial filing, IRS learned that Joseph had died and that Josephine had conveyed the subject property for full and fair consideration. Accordingly, IRS filed the Amended Complaint.

2. There appears to be some dispute as to when the liability accrued. Josephine states that IRS stipulated that Joseph's tax liabilities arose during the last two quarters of 1984, the whole of 1985, and the first two quarters of 1986. (Def.Br., p. 5.) This appears to be a misunderstanding by Josephine. In both its Amended Complaint and the Proposed Final Pre–Trial Order, IRS states that Lime Waterproofing incurred substantial liability for employment taxes during the periods ending September 30, 1994 through June 30, 1986 (Amended Complaint, ¶ 7 and Proposed Final Pre–Trial Order, Plaintiff's Contested Allegations, ¶ 3), but that Joseph himself incurred liability only during the last two quarters of 1984

and the whole of 1985 (Amended Complaint, ¶ 12 and Proposed Final Pre–Trial Order, Plaintiff's Contested Allegations, ¶ 8). For purposes of this motion, the court will presume that Joseph's liability accrued through the end of 1985.

3. Section 6901 provides in relevant part:

The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
(1) Income, estate, and gift taxes—
(A) Transferees.—The liability, at law or in equity, of a transferee of property—
(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes)....
The United States argues that § 6901 is irrelevant to these proceedings because that section does not apply to withheld employee taxes. While we agree that § 6901 is irrelevant to this case for reasons explained *infra*, the Court does

provides for a summary administrative procedure for collecting certain unpaid taxes from transferees of taxpayers' property. That statute also requires that an assessment against a transferee must take place within four years of the incurrence of the tax liability by the transferor. Josephine argues that without such assessment, the United States is powerless to collect any monies obtained by her as a result of the allegedly fraudulent transfer to her of Joseph's interest in the Old Bridge Property.

No assessment has been made or, at this point, could be made against Josephine. However, even if the United States cannot proceed under § 6901, that alone will not bar the United States from recouping value fraudulently transferred.

It is clear that § 6901 is not an exclusive remedy, but was enacted as an alternative, cumulative remedy. The United States has "the right ... to proceed against transferees by suit" and that right remains "unless taken away by ... specific words or clear intendment." *Leighton v. United States*, 289 U.S. 506, 507–08, 53 S.Ct. 719, 520, 77 L.Ed. 1350 (1933). In that case, the Supreme Court held that failure to personally assess shareholders of a defunct corporation as required by § 6901 did not bar an action to impose transferee liability on them. In *United States v. Geniviva*, 16 F.3d 522 (3d Cir.1994), the Third Circuit noted that "*Leighton* has never been overruled, either by the Court or by statute, and it is binding upon us" and held that a § 6901 assessment is not a prerequisite to an action against transferees under 26 U.S.C. § 6324(a)(2), which imposes liability on the transferees of a decedent's estate when the estate itself fails to pay its federal taxes. The Court held that § 6324 was a remedy separate from that supplied by

§ 6901. *Id.* See also *United States v. Russell*, 461 F.2d 605, 633–34 (10th Cir.), *cert. denied*, 409 U.S. 1012, 93 S.Ct. 438, 34 L.Ed.2d 306 (1972) (§ 6901 assessment not required to maintain action under § 6324, as provisions were "cumulative and alternative—not exclusive or mandatory").

Certainly the United States as a creditor has the right, like any other creditor, to bring an action either to enforce a lien under 26 U.S.C. § 7403 or against the transferee of a taxpayer for a fraudulent conveyance. *See United States v. Rodgers*, 461 U.S. at 682, 103 S.Ct. at 2136–37. This Court sees no reason not to treat § 6901 as "cumulative and alternative" to this right. Most importantly, this court sees no "specific words or intendment" that would demonstrate that Congress took away this right. Thus, the Court sees no reasonable basis on which to distinguish *Leighton* from the facts of this case.

Next, Josephine argues that this action should be barred by the six-year statute of limitations applicable to the New Jersey Uniform Fraudulent Conveyance Law, *N.J.S.A.* 25:2–7 *et seq.*[4] If the United States were subject to this limitation, the present action would appear to be barred. However, it is beyond dispute that the United States, where it is acting in its governmental capacity, is not bound by local statutes of limitations absent its consent. *U.S. v. John Hancock Mut. Life Ins.*, 364 U.S. 301, 308, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960); *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 133, 58 S.Ct. 785, 789, 82 L.Ed. 1224 (1938); *United States v. St. John's General Hosp.*, 875 F.2d 1064 (3d Cir.1989); *United States v. Studi-*

not necessarily agree that § 6901 is always irrelevant to the collection of withheld employee taxes. *See United States v. Rodgers*, 461 U.S. 677, 694 fn. 18, 103 S.Ct. 2132, 2142 fn. 18, 76 L.Ed.2d 236 (1982) (assuming in *dicta* that § 6901 could apply to a defendant who was a transferee of property of a deceased taxpayer where such taxpayer had failed to pay to the United States withheld employee taxes.)

4. New Jersey enacted the New Jersey Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2–20 et seq., on August 1, 1988. That legislation was effective January 1, 1989, and is not applied retroactively. Because the subject transfer took place in 1985, the court must apply the now-repealed New Jersey Uniform Fraudulent Conveyance Law, which is subject to the six-year statute of limitations period contained in *N.J.S.A.*, 2A:14–1. *Silverman*

*vant,* 529 F.2d 673 (3d Cir.1975).[5] The Fifth Circuit has held that the statute of limitations applicable to fraudulent conveyances in Florida was not a bar to an action by the United States; rather, the Court held that 26 U.S.C. § 6502 provided the applicable limitations period. *United States v. Fernon,* 640 F.2d 609 (5th Cir.1981). *See also United States v. Christensen,* 751 F.Supp. 1532 (D.Utah 1990) (federal limitations period of § 6502, rather than Utah limitations period, applicable to action against delinquent taxpayer's transferee for fraudulent conveyance).

▆ Josephine also argues that IRS erroneously relies on 26 U.S.C. § 6322, "which permits the plaintiff to commence litigation to collect on a levy within 10 years of the date of the assessment of the tax against the taxpayer." (Def.Supp.Br., p. 1.) The crux of Josephine's argument appears to be that because there was no assessment against Josephine, the United States may not benefit from the 10–year limitations period applicable to enforcement of tax liens by the United States.

Federal tax liens arise pursuant to 26 U.S.C. § 6321, which states in relevant part:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The related § 6322 states in relevant part:

> .... the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

*v. Christian,* 123 N.J.Eq. 506, 198 A. 832 (N.J.Ch. 1938).

5. The outcome might be different if this action were brought under the more recent New Jersey Fraudulent Transfer Act. That Act is not subject to a typical statute of limitation, such as *N.J.S.A.* 2A:14–1, that merely cuts off the remedy after a certain period of time. Instead, the Fraudulent

Section 6502 is the applicable statute of limitations for this action. Section 6502 provides:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax.

Hence, a tax lien is enforceable by court action for 10 years.

There is no dispute that an assessment against Joseph was timely made on March 9, 1987. Even taking the October 23, 1992 date of the Amended Complaint, the present "proceeding in court" was instituted against Josephine five years and seven months after that assessment, well within the 10–year time limit.

Josephine argues that an assessment must have been made against her for the United States to be able to collect Joseph's unpaid taxes from her. However, property that was fraudulently conveyed without full and fair consideration is still treated as Joseph's property. An assessment was made against Joseph on March 9, 1987, at which time a lien arose on all of Joseph's property. *See Fernon,* 640 F.2d 609 (relevant assessment was that made on delinquent taxpayer, not transferee) and *Christensen* 751 F.Supp. 1532 (same). Accordingly, this action is not time-barred.

Additionally, there appears to be no reason to require the United States to proceed under §§ 6321, 6322, and 7403, rather than simply under a state's fraudulent conveyance laws as a creditor. There have been cases where the United States appears to have proceeded under both the federal and state statutes at the same time. *See Fernon,* 640 F.2d 609 and *Christensen,* 751 F.Supp. 1532.

Transfer Act provides that the right itself is extinguished. Where the United States no longer has a right under state law, as opposed to a remedy for that right, it is difficult to see how the United States can maintain an action. *See United States v. California and California State Bd. of Educ.,* —— U.S. ——, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993).

But to hold that the United States *must* proceed under these federal statutes rather than under a state's fraudulent conveyance law would seem contrary to *Leighton*'s holding that the United States has "the right . . . to proceed against transferees by suit" and that right remains "unless taken away by . . . specific words or clear intendment." 289 U.S. at 507–08, 53 S.Ct. at 720.

■ Josephine also argues that because the United States was not owed tax at the time the Old Bridge property was transferred, it cannot bring an action for fraudulent conveyance under the New Jersey Fraudulent Conveyance Act. Defendant argues that because the assessments against Joseph Perrina occurred in March of 1987, nearly one and one-half years after the alleged fraudulent conveyance that occurred on October 7, 1985, no cause of action for fraudulent conveyance may be maintained.

Defendant is mistaken. First, a conveyance made "with actual intent . . . to hinder, delay, or defraud either present or *future* creditors is fraudulent as to present and *future* creditors." *N.J.S.A.* 25:2–13 (emphasis added). Moreover, even if creditor status at the time of transfer were a requirement, in the context of employee taxes, a party becomes liable for those taxes upon the withholding of the taxes, not upon the assessment of tax liability. *United States v. Edwards*, 572 F.Supp. 1527 (D.Conn.1983); *United States v. De Beradinis*, 395 F.Supp. 944 (D.Conn.1975), *affirmed* 538 F.2d 315 (2d Cir.1976).

Accordingly, defendant's motion for summary judgment will be denied.