PARKER, Judge.
Parts Depot, Inc. appeals a final judgment entered after the trial court granted motions for involuntary dismissal against Parts Depot and in favor of David Bullock (son), Judith Bullock (son’s wife), L.J. Bullock (father), and Hazel McCallister (mother) at the close of the presentation of the evidence of Parts Depot. Parts Depot had filed a creditor’s bill to set aside separate conveyances of property from the son and his wife to the mother and to the father. We affirm in part and reverse in part.
This appeal concerns five lots of commercial property in Collier County. All five lots were awarded initially to the mother in a dissolution of marriage proceeding between the mother and father. The mother thereafter conveyed the five lots to the son and his wife. A hardware store operated by the son was located on lots 1 and 2; a convenience store and laundromat were located on lots 4 and 5; and lot 3 was vacant. A local financial institution held a mortgage executed by the son and his wife in the amount of $275,000, which encumbered all five lots.
Parts Depot obtained a final judgment against the son and his wife, which was entered in Dade County Circuit Court on June 26, 1985. On that date, the son and his wife owned all five lots. Parts Depot recorded the final judgment in Collier County on July 11, 1985, at 4:39 p.m. By that time, the son and his wife had conveyed lots 1, 2, and 3 to the father and lots 4 and 5 to the mother. The facts surrounding- each conveyance, as viewed in the light most favorable to Parts Depot, are set forth below.
By quitclaim deed dated June 27, 1985, and recorded in Collier County on July 5, 1985, the son and his wife conveyed lots 4 and 5 to' the mother. These lots were worth $145,000, and the mother paid no consideration for the transfer. Further, the mother was aware of her son’s indebtedness to Parts Depot, and she made some payments to Parts Depot on behalf of her son because he was “broke”; however, she testified that she did not know specifically about a judgment.
The facts surrounding the transfer to the father are more complicated. In May 1985, a fire destroyed the hardware store. The father went to visit his son and offered assistance. Initially, the father intended to *470 perform the “leg work” to get the hardware store back in business. The father soon realized that the son’s poor health prevented the son from operating the business. The father then decided that he would purchase the business for his own purposes. The father did not discuss the contemplated purchase with his son; the father dealt directly with the mortgagee. The father paid the mortgagee $88,190, and the mortgagee received the entire insurance proceeds for the fire damage which totaled $193,000. A title company handled the closing where the son and his wife conveyed lots 1, 2, and 3 to the father by quitclaim deed dated July 10, 1985, and warranty deed dated July 10, 1985, which were recorded in Collier County on July 11, 1985, at 8:06 a.m. and 2:58 p.m., respectively. The value of these lots was $105,000. The father testified that he and his son did not have a close relationship and that he was unaware of his son’s financial condition.
To prevail on the motions to dismiss at the close of its case, Parts Depot was required to prove a prima facie case of the existence of a fraudulent transfer. Courts have recognized certain circumstances which constitute indicia of fraud. See, e.g., McKeown v. Allen, 37 Fla. 490, 20 So. 556 (1896) (lack of or insufficient consideration for the transfer); Money v. Powell, 139 So.2d 702 (Fla. 2d DCA 1962) (recently obtained judgment against transferor); Tornwall v. Carter, 106 So.2d 96 (Fla. 2d DCA 1958) (close relationship); Banner Constr. Corp. v. Arnold, 128 So.2d 893 (Fla. 1st DCA 1961) (insolvency or substantial indebtedness of transferor). Although the courts have enunciated these indicia of fraud, “the law furnishes no test by which fraud can be determined. Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and the number occurring in the same case.... And while a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.” Banner Constr. Corp., 128 So.2d at 896.
We must review this case in terms of whether an involuntary dismissal was proper. The Florida Supreme Court adopted the following standard set forth in the case of Rogge v. Weaver, 368 P.2d 810 (Alaska 1962):
[W]here plaintiff has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion [to dismiss] even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that ... the trial judge should follow the alternative offered by the rule where it is provided that he “ * * * may decline to render any judgment until the close of all the evidence”, and deny the motion. If, after denial of the motion, the defendant declines to present any evidence, the judge must, of course, then exercise his own judgment in applying the law to' the facts presented and rule on the motion and decide the case.
Tillman v. Baskin, 260 So.2d 509, 511 (Fla.1972) (quoting Rogge, 368 P.2d at 813).
Parts Depot proved a prima facie case of fraudulent transfer as it relates to the conveyance to the mother. The son conveyed property worth $145,000 to his mother for no consideration. Although the mother denied specific knowledge of the Parts Depot judgment, she was aware generally of the son’s poor financial condition and specifically about the debt owed to Parts Depot. The mother argues that her testimony proved her defense of a resulting trust. We nevertheless conclude that the trial judge erred in dismissing the claim against the mother at the close of Parts Depot’s case. The trial judge should have allowed the defendants to proceed and then afforded Parts Depot the opportunity to rebut the evidence regarding the existence of the resulting trust. The trial court, therefore, abused its discretion in granting an involuntary dismissal of Parts Depot’s claim concerning the conveyance to the mother.
*471 The conveyance to the father presents a close case. Certainly, some indi-cia of fraud exist in that there was a conveyance to a relative and the deeds were recorded the same day as the recordation of Parts Depot’s judgment. This court must decide whether the trial court abused its discretion in ruling that the evidence, viewed in the light most favorable to Parts Depot, did not establish a prima facie case of a fraudulent transfer. See Glass v. Long, 341 So.2d 1066 (Fla. 2d DCA 1977).
It is significant that the father paid $88,-190 for the property, which was valued at $105,000. When a conveyance is made for valuable consideration, the mutual fraudulent intent of the parties is the determining factor. Green v. Casper, 346 So.2d 1204 (Fla. 3d DCA), cert. denied, 353 So.2d 675 (Fla.1977). The law does not impute a fraudulent intent to the purchaser, Vickers v. Glenn, 102 Fla. 535, 136 So. 326 (1931); however, a conveyance for value may be set aside when the purchaser knew or should have known of the transferor’s fraudulent intent. Valdosta Mercantile Co. v. White, 52 Fla. 453, 42 So. 633 (1906).
Parts Depot presented no evidence that the father knew or should have known of his son’s alleged fraudulent intent. To the contrary, the father expressly denied any knowledge of his son’s financial condition. The father was aware only that when the fire destroyed the hardware store, there was insufficient money from the insurance to rebuild the business and that the mortgage covering the property was in default. The father then dealt directly with the mortgagee and paid eighty-four percent of the appraised value of the property. Further, the son retained no interest in the property, and the father assumed the business obligations for his own purposes. Based upon this evidence, we cannot say that the trial court abused its discretion in concluding that Parts Depot failed to establish a prima facie case of a fraudulent conveyance to the father.
We affirm the order of final judgment as it relates to L.J. Bullock. We, however, reverse the order of final judgment relating to Hazel E. McCallister and remand to the trial court for a new trial.
Affirmed in part; reversed in part and remanded.
RYDER, A.C.J., and FRANK, J., concur.