UNITED STATES of America,
Plaintiff,

v.

Mary Ellen Margaret MAZZEO, a/k/a
Melony Mazzeo, and Long Island Sav-
ings Bank, New York State Depart-
ment of Taxation & Finance, and
Richard L. Stern as Chapter 7 Trustee
in the case of Salvator J. Mazzeo,
Case No. 896087418 (Bankr.E.D.N.Y.),
Defendants.

No. 98–CV–3060(JS).

United States District Court,
E.D. New York.

Sept. 30, 1999.

Loretta E. Lynch, United States Attorney, Eastern District of New York, by Bartholemew Cirenza, Trial Attorney, United States Department of Justice, Washington, D.C., for Plaintiff.

Joseph J. Haspel, Stein, Riso, Mantel, Haspel & Jacobs LLP, New York City, for Defendant Mazzeo.

E. Christopher Murray, Reisman, Peirez, Reisman & Calica, LLP, Garden City, NY, for Defendant Long Island Savings Bank.

Eliot Spitzer, Attorney General of the State of New York, by Alan Gitter, Associate Attorney, Real Property Bureau, New York City, for Defendant New York State Department of Taxation & Finance.

Richard L. Stern, Macco Hackeling & Stern, Huntington, NY, for Defendant Richard L. Stern, Chapter 7 Trustee.

## MEMORANDUM AND ORDER

### SEYBERT, District Judge.

Pending before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this action commenced by the United States of America (hereinafter the "Government" or "Plaintiff"), pursuant to Title 26 United States Code, Sections 7401 and 7403, seeking to have this Court declare the conveyance of certain real property to Defendant Mary Ellen Margaret Mazzeo, (hereinafter "Mary", "Mary Mazzeo" or "Defendant Mazzeo"), and the subsequent transfer of funds to improve such property, null and void, and to order the foreclosure and sale of such real property to satisfy certain federal tax liens.

In addition, presently pending before United States District Court Judge Leonard D. Wexler is civil docket case number 97–CV–6325, entitled *United States v. Salvatore J. Mazzeo, et al.*, in which the Government is attempting to reduce to judgment unpaid withheld federal income and Federal Insurance Contribution Act ("FICA") taxes, totaling $999,305.68, incurred by Salvatore J. Mazzeo, Defendant Mary Mazzeo's husband, on compensation paid to employees of Westfield Financial Corporation for the calendar year ended December 31, 1994.

### FACTUAL BACKGROUND

To better understand the parties claims and the factual and procedural history leading up to this action, the Court will summarize the respective roles of the parties, the real property transactions, the tax deficiencies and the bankruptcy proceedings, in a chronological account, before addressing the specific claims, defenses and legal issues raised.

### I. THE PARTIES

Defendant Mary Mazzeo is the record owner of the real property at issue, located at 41 Post Avenue, East Williston, New York, (hereinafter the "Property"). Defendant Long Island Savings Bank (hereinafter "LISB"), is the mortgagee and first lien holder of the Property. Plaintiff is seeking to satisfy federal tax liens against Defendant Mary Mazzeo's husband, Salvatore J. Mazzeo, (hereinafter "Salvatore" or the "Taxpayer"), through foreclosure sale of the Property. Defendant New York State Department of Taxation and Finance holds a responsible person tax lien against Salvatore Mazzeo. Defendant Richard Stern is the Chapter 7 Trustee in Salvatore Mazzeo's bankruptcy proceedings.

### II. THE PROPERTY

On July 9, 1985, title to the Property was transferred from Mark and Francine Ryan, to the Taxpayer, for the sum of $335,000. (Pl.'s Ex. D.) Dime Savings Bank of New York (the "Dime"), provided $235,000 of the funds to purchase the Property and recorded a first mortgage in that amount on that day. At the time of the purchase, Salvatore J. Mazzeo was not married. Salvatore and Mary married approximately two months later, on September 22, 1985. Salvatore transferred title to the Property to Mary on December 11, 1985, as recorded on February 3, 1986. The transfer was made for no financial consideration, rather, it was recorded as made "in consideration of love and affection and as a gift." (Pl.'s Ex. H.) The Property was subsequently refinanced by Mary Mazzeo on July 17, 1987, through LISB, in the amount of $261,800, with the proceeds used, in part, to satisfy the Dime

mortgage. (Pl.'s Ex. L.) During April of 1995, Salvatore Mazzeo purportedly contracted with a construction company to demolish the house located on the Property and construct a new home in its stead.

## III. THE TAX DEFICIENCIES

Salvatore J. Mazzeo filed his 1984 Federal Individual Income Tax Return ("Form 1040") on October 5, 1987, reporting a total tax liability of approximately $60,000 in tax and penalties, and he included a payment of $10,000 toward this liability. On November 9, 1987, assessments against Salvatore were made with regard to tax year 1984 in the total amount of $102,161.99, and a notice of assessment was issued. By operation of law and upon notice of assessment, a lien arose in favor of the United States and attached to all property and rights to property of Salvatore J. Mazzeo. Although he did satisfy his tax delinquencies for calendar years 1986 through 1988, further assessments totaling $999,305.68 were subsequently lodged against Salvatore J. Mazzeo as described *supra*. On September 2, 1988, a Notice of Federal Tax Lien was filed in Nassau County with respect to the 1984 assessment against Salvatore J. Mazzeo. That Lien was subsequently released in error on February 6, 1998, and a correcting Revocation of Certificate of Release of Federal Tax Lien was filed on April 2, 1998.

## IV. THE BANKRUPTCY PROCEEDINGS

On December 21, 1995, Salvatore Mazzeo filed a voluntary petition in bankruptcy under Chapter 13 of the United States Bankruptcy Code. He reported assets totaling $4,800 and liabilities totaling $237,000. Salvatore did not include his tax liability in his bankruptcy schedules, and additional alleged unreported debts were later uncovered. The Chapter 13 case was dismissed for lack of jurisdiction having exceeded the statutory unsecured debt limit. *In re Mazzeo*, 213 B.R. 625 (E.D.N.Y.1996). Thereafter, on November 15, 1996, Salvatore J. Mazzeo filed a voluntary petition under Chapter 11, which was later converted to Chapter 7 petition on October 27, 1997. At that time Salvatore reported assets of $5,600 and liabilities exceeding $2,250,000. The Bankruptcy Court issued an Order granting the Government relief from the automatic stay with respect to the "Responsible Person Claim," which is relevant to the litigation in front of Judge Wexler. Salvatore received his discharge in bankruptcy on February 28, 1998.

## DISCUSSION

### I. STANDARDS FOR GRANTING SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (1983)).

A party opposing a motion for summary judgment " 'may not rest upon the mere

allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)).

It is within this framework that the Court addresses the present cross-motions for summary judgment motion.

### GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

### II. FRAUDULENT CONVEYANCE CLAIM

■ Plaintiff moves to set aside the conveyance of the Property pursuant to Sections 273 and 276 of the New York State Debtors and Creditors Law. Plaintiff turns to state law because the validity of the conveyance is governed by New York law. *See United States v. McCombs,* 30 F.3d 310, 323 (2d Cir.1994) (citing *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279, 4 L.Ed.2d 1365 (1960) ("federal ... courts must look to state law" to ascertain whether a taxpayer has a property interest in property subjected to a federal tax lien)); *see also United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983) ("It has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter of federal law.").

In determining the merits of Plaintiff's motion, it must be determined whether the Taxpayer's conveyance of the Property to Defendant Mazzeo was fraudulent. This is so, in part, because "the lien imposed by section 6321 shall not be valid as against any purchaser ... until notice ... has been filed by the Secretary," 26 U.S.C. § 6323(a), and it is undisputed that the IRS did not file a lien before the Taxpayer conveyed the property to the Defendant as the tax assessment and lien arose on or about November 9, 1987, for Taxpayer's federal tax liability for calendar year 1984, in an amount of $102,161.99, while the property was conveyed on or about December 11, 1985. A lien imposed pursuant to section 6321 is deemed to arise at the time that the assessment is made. *See* 26 U.S.C. § 6322.

Therefore, the Government must prove either that the Defendant is not a "purchaser" within the meaning of the code or that the conveyance was fraudulent and must be set aside, otherwise, the IRS is without a claim against the property. *See McCombs,* 30 F.3d at 322 (finding absent a set aside of the pre-assessment conveyance under state law, the taxpayer did not have a legal interest in the property at the time the tax lien attached).

1. Fraudulent Conveyance Pursuant to Section 273

The Government contends that Taxpayer's conveyance of the Property to Defendant Mazzeo was constructively and actually fraudulent as defined in sections 273 and 276 of the New York Debtor and Creditor Law.

Section 273 states, in relevant part:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regards to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. Debt. & Cred. Law § 273. This section has been interpreted to cover constructive fraud. *See e.g., Elgin Sweeper Co. v. Melson Inc.,* 884 F.Supp. 641, 649 (N.D.N.Y.1995) (holding that under New York law, plaintiff can recover for fraudu-

lent conveyance without directly proving intent, by establishing "constructive fraud," which can be proven merely by showing that the transfer was made without fair consideration, thus it constitutes a fraudulent conveyance regardless of transferor's intent).

■ Therefore, to establish a fraudulent conveyance under this section, the Government must prove that: (1) the property was conveyed from Salvatore J. Mazzeo to Mary Ellen Margaret Mazzeo; (2) Taxpayer was or would become insolvent at the time of the conveyance; and (3) the conveyance was made without fair consideration. There is no dispute that the property was conveyed and the first element is therefore established.

Insolvency, the second element, is defined in Section 271, and a person is deemed insolvent when:

> The present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

N.Y. Debt. & Cred. Law § 271. Defendant challenges the Government's contention that Taxpayer was insolvent at the time of the conveyance and/or immediately thereafter.

■ The element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee. *See Snyder v. United States,* No. 88–CV–2136, 1995 WL 724529, at *10 (E.D.N.Y.1995).

With respect to the element of fair consideration, the Debtor and Creditor law definition is found in Section 272, which provides:

> Fair consideration is given for the property, or obligation,
> (a) When in exchange for such property, or obligation, as a fair equivalent thereof, and in good faith, property is conveyed or an antecedent debt is satisfied, or

> (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272.

■ Courts view intrafamily transfers made without any signs of tangible consideration as presumptively fraudulent. Thus, in *McCombs,* the court found that "shifting the burden of persuasion to an intrafamily transferee is triggered under New York law by the presence of one of two factors in the conveyance: (1) the absence of any tangible consideration, or (2) a clandestine transfer of property designed to conceal the nature and value of the consideration." 30 F.3d at 325. In the case at bar there is no allegation that the transfer was effectuated in a clandestine manner. Rather, the conveyance was recorded in accordance with the laws of the State of New York. However, it is clear from the deed which states that the property was conferred in exchange for "love and affection and as a gift," and Salvatore J. Mazzeo's statement that the property was conveyed for the sole reason of giving Mary Ellen a sense of security after she had lost everything in a failed marriage. (S. Mazzeo 56.1 ¶ 3.) The Court concludes that the transfer was not made for fair consideration, and accordingly, insolvency is presumed.

The issue of insolvency in the context of a fraudulent conveyance claim has been considered so factually steeped as to be inappropriate for summary adjudication, *see United States v. Sitka,* No. 2:90CV00268, 1994 WL 389473, at *6, 7 (D.Conn.1994), although in clear cases, summary judgment is an available remedy. *See United States v. Alfano,* 34 F.Supp.2d 827 (E.D.N.Y.1999).

■ In the instant action, the Court concludes that genuine issues of material fact exist to preclude summary judgment. Salvatore J. Mazzeo's self-proclaimed net

worth as of December 1985 is in excess of $550,000, which far exceeds his 1984 tax liability. (S. Mazzeo 56.1 ¶ 5.) Although the value of the specific assets listed are challenged by the Government on an asset by asset basis as to, *inter alia,* their "fair salable value," the Court cannot state as a matter of law based on the evidence presented and after resolving all inferences in favor of the non-movant that no rational juror could conclude that Salvatore J. Mazzeo was solvent at the time of the conveyance of the Property.

## 2. Fraudulent Conveyance Pursuant to Section 276

■ The Government also moves to set aside the transfer pursuant to Section 276 of the New York State Debtors and Creditors Law. Section 276 provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. Law § 276. As explained by the Second Circuit, "unlike section 273 which creates constructive fraud by virtue of the lack of fair consideration, section 276 focuses on the "actual intent" of the transacting parties. Indeed, where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *McCombs,* 30 F.3d at 327–28. However, intent can be inferentially proven. *See In re Montclair Homes,* 200 B.R. 84, 97 (Bankr.E.D.N.Y.1996) (finding that intent does not need to be shown by direct evidence, and is normally inferred from the circumstances surrounding the transfer). Still, actual intent to defraud must be proven by the party seeking to set aside the conveyance by clear and convincing evidence. *McCombs,* 30 F.3d at 328 (citing *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20 (2d Dep't 1986) & *ACLI Gov't Sec. v.*

*Rhoades,* 653 F.Supp. 1388, 1394 (S.D.N.Y. 1987)).

■ Factors utilized by courts to circumstantially infer actual intent—which have been termed "badges of fraud"—include: (1) whether the consideration received was adequate or existent at all; (2) whether the transferee was a relative; (3) whether the debtor retained possession; and (4) whether the debtor's financial condition change after the transfer. *In re Kaiser,* 722 F.2d 1574, 1582–83 (2d Cir. 1983). More recently the Second Circuit noted that the "'fraudulent nature of a conveyance may be inferred from the relationship among the parties to the transaction and the secrecy of the sale, or from inadequacy of consideration and hasty, unusual transactions.'" *McCombs,* 30 F.3d at 328 (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1041 (2d Cir.1984)); *but see United States v. Digiulio,* No. 95–CV–219S, 1997 WL 834820, at *11 (W.D.N.Y. 1997) (denying fraudulent conveyance claim because evidence did not convince the court that the transfer qualified as an "exception to the well-established rule that summary judgment is normally inappropriate when deciding questions of intent").

■ Once again, because there are genuine issues of material fact respecting Salvatore J. Mazzeo's solvency when the Property was conveyed, summary judgment is inappropriate as the Court cannot conclude as a matter of law that an actual fraudulent conveyance took place.

In addition, the Court finds genuine issues of material fact precluding the Government's request to order the foreclosure and sale of the subject Property based on the funds Salvatore J. Mazzeo expended to improve the Property to satisfy the federal tax lien.

Accordingly, the Government's motion for summary judgment is denied in its entirety.

## DEFENDANT MAZZEO'S CROSS-MOTION FOR SUMMARY JUDGMENT

### 1. Pending Litigation Claim

Defendant Mazzeo asserts that because the litigation pending before Judge Wexler involves the amount of the underlying debt, the Government's motion for summary judgment respecting the fraudulent conveyance cannot be granted. This issue is moot because, as stated *supra*, genuine issues of material fact exist pertaining to Salvatore Mazzeo's solvency at the time of the conveyance.

### 2. Underlying Tax Liability

■ Defendant Mazzeo next asserts that the 1984 Income Tax liability was discharged in bankruptcy, citing Section 727 of the Bankruptcy Code. Further, Mazzeo avers that the tax liability was over three years old at the time of the bankruptcy and is therefore discharged pursuant to 11 U.S.C. § 523.

The Government cites to *In re Isom*, 901 F.2d 744 (9th Cir.1990) which specifically held that "26 U.S.C. § 6325(a)(1) does not require the I.R.S. to release valid tax liens when the underlying tax debt is discharged in bankruptcy." *Id.* at 745. To properly analyze its relevance to the instant action requires a more detailed understanding of the applicable tax provisions.

■ A tax lien arises from Section 6321 of Title 26 of the United States Code, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. This language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985) (citations omitted). The lien shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time. *See* 26 U.S.C. § 6322; *see also United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954) (describing lien as choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established" and the federal tax lien, as a general lien when attached at the time of assessment to all of the taxpayer's property, was thus perfected). "A federal tax lien becomes a lien on all property of the debtor, so the property need not be described." *In re LMS Holding Co.*, 50 F.3d 1526, 1530 (10th Cir.1995).

A lien is released when "the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or becomes legally unenforceable," and the Secretary shall thereafter within 30 days issue a certificate of release. *See* 26 U.S.C. § 6325(a)(1).

The vast weight of legal authority supports the conclusion that a valid tax lien survives a discharge in bankruptcy against the debtor's property. Illustrative is *In re Leavell*, 124 B.R. 535, 540 (Bankr. S.D.Ill.1991), wherein the court recited the general rule, "[o]nce the taxpayer files for bankruptcy and receives a discharge, he is relieved of personal liability for dischargeable tax debts. The debtor's discharge does not automatically invalidate tax liens securing dischargeable debts, and these liens continue beyond bankruptcy as a charge upon the debtor's property if not disallowed or avoided." *Id.* (citing *In re Leslie*, 103 B.R. 775 (Bankr.S.D.W.Va. 1989) & *In re Dillard*, 118 B.R. 89 (Bankr. N.D.Ill.1990)). This reasoning was also

followed by *In re Stephenson*, 96 B.R. 388 (Bankr.S.D.Fla.1988), as the court upheld the federal tax lien recorded against the debtors' homestead prior to their Chapter 7 filing, even though the underlying tax obligation was discharged in bankruptcy. *Id.* at 389 (citing *Verran v. United States Treasury Dep't*, 623 F.2d 477, 479 (6th Cir.1980)) (holding the IRS could collect unpaid tax liability from property owned by debtors prior to their petition in bankruptcy to the extent the government possessed a valid lien upon such property); *see also In re Sills*, 82 F.3d 111, 113 (5th Cir.1996) (affirming validity of IRS tax lien and finding claim that lien is unenforceable to be meritless); *In re Aylward*, 208 B.R. 565 (Bankr.M.D.Fla.1997) (Chapter 11 debtor claimed tax lien was unenforceable, because, in part, it was not perfected as required by the Bankruptcy Code, however, the court looked to the applicable IRS Code in determining that the lien was enforceable and the debtor's discharge only protected personal debt and not property).

. Finally, this Court in *Alfano* rejected a similar argument challenging the validity of the tax lien post-bankruptcy discharge. 34 F.Supp.2d at 838. Accordingly, although Mazzeo's discharge in bankruptcy eliminated his personal liability for his tax debt, it did not absolve the tax liens which remain against his property.

### 3. Standing

Defendant Mazzeo challenges the Government's right to bring this suit, as she, Mary Ellen Margaret Mazzeo, is not the taxpayer subject to the lien and Salvatore is not a named party Defendant. The government may pursue outstanding tax liens in district courts pursuant to 26 U.S.C. § 7403. Further, 26 U.S.C. § 6331(a) provides in relevant part, "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." *See Jones v. Internal Revenue Serv.*, 206 B.R. 614, 617 (Bankr.D.C.1997) (observing that pursuant to § 6331, a tax levy can be made on either property belonging to the taxpayer or on property subject to a tax lien as in the case of property the debtor has conveyed to another before levy has been attempted).

Applicable Supreme Court precedent upholds the United States' authority to take action against a transferee of property to collect outstanding tax liens. *United States v. Rodgers*, 461 U.S. 677, 694 n. 18, 103 S.Ct. 2132, 2142 n. 18, 76 L.Ed.2d 236 (1983) (interpreting Section 7403 to reach the entire property in which a delinquent taxpayer has or had any "right, title, or interest"); *see also Kathy B. Enters., Inc. v. United States*, 779 F.2d 1413, 1415 (9th Cir.1986) (affirming district court's ruling that IRS could proceed against transferee of taxpayer's property prior to taxpayer's discharge in bankruptcy); *United States v. Nicholson*, No. CIV. A. 97–CV–3309, 1998 WL 437267, at *4 (E.D.Pa. July 15, 1998) (holding that "26 U.S.C. § 6901(a) provides a summary administrative procedure for the collection of an existing tax liability from transferees of the taxpayer's property," and this is not the government's exclusive remedy); *United States v. Perrina*, 877 F.Supp. 215, 217 (D.N.J.1994) (stating the "United States as a creditor has the right, like any other creditor, to bring an action either to enforce a lien under 26 U.S.C. § 7403 or against the transferee of a taxpayer for a fraudulent conveyance").

Specifically, the Supreme Court held that Section 7403 does grant the district court the power to order the sale of a property to satisfy an outstanding lien, but "that its exercise is limited to some degree by equitable discretion." *Rodgers*, 461 U.S. at 680, 103 S.Ct. at 2136. Moreover, Salvatore Mazzeo has not claimed a present legal interest in the subject Property.

One other statutory provision bears noting. From the bankruptcy laws, 11 U.S.C. § 524(e) provides that the "discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt," also supporting the authority of the Government to proceed against Defendant Mazzeo notwithstanding her husband's bankruptcy discharge. Accordingly, Plaintiff has standing to bring this action against Defendant Mary Elizabeth Margaret Mazzeo, even without joining Salvatore J. Mazzeo.

### III. Statute of Limitations

■ Finally, Defendant Mazzeo asserts that the Government cannot institute this fraudulent conveyance action because it is barred by the applicable statute of limitations. However, as the Government correctly points out, the applicable statute of limitations is ten years, see 26 U.S.C. § 6502(a)(1), and it accrues from the date of assessment. Here, the 1984 tax liability was assessed on November 9, 1987. The complaint was filed on April 22, 1998. Although this ostensibly exceeds the ten year statutory period, 26 U.S.C. § 6503(h) tolls the running of the statute of limitations during the automatic stay provision of 11 U.S.C. § 362. See In re Montoya, 965 F.2d 554 (7th Cir.1992) (three year nondischargeability provision was tolled during pendency of bankruptcy provision); In re Greene, 50 B.R. 785 (S.D.N.Y.1985) (IRS subject to automatic stay with respect to prepetition claims).

All other arguments raised by Defendant Mazzeo have been considered and are found to be without merit. Accordingly, Defendant Mazzeo's cross-motion for summary judgment is denied.

LISB has cross-moved for summary judgment to declare the mortgage a valid first lien superior to all other liens on the Property. However, because the Court finds genuine issues of material fact extant respecting the Government's fraudulent conveyance claim, LISB's motion is premature and unnecessary to decide at this juncture.

### CONCLUSION

For all the aforementioned reasons, the Court hereby denies: (1)Plaintiff United State of America's motion for summary judgment; (2) Defendant Mary Ellen Margaret Mazzeo's motion for summary judgment; and (3) Defendant Long Island Savings Bank's motion for summary judgment.

SO ORDERED.